UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

DAVID LYNN,                                           Case No. 1:19-cv-869
        Petitioner,

                                                     McFarland, J.
        vs.                                          Litkovitz, M.J.

WARDEN, MADISON                                      **REPORT AND**
CORRECTIONAL INSTITUTION,                            **RECOMMENDATION**
        Respondent.


        Petitioner, an inmate in state custody at the Madison Correctional Institution, has filed a

pro se petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  (Doc. 1).  This matter is

before the Court on the petition, respondent's return of writ, and petitioner's reply.  (Docs. 1, 7,

10).  For the reasons stated below, the undersigned recommends that the petition be denied.

## I. FACTUAL BACKGROUND

        The Ohio Court of Appeals, Twelfth Appellate District set forth the following summary

of the facts that led to petitioner's conviction and sentence:[1]

> {¶2} On December 20, 2016, the Butler County Grand Jury returned a multi-
> count indictment charging Lynn with several felony drug offenses, including
> trafficking in cocaine, aggravated trafficking in drugs, and trafficking in drugs.
> According to the bill of particulars, the charges arose after officers with the
> Fairfield Police Department discovered crack cocaine and heroin in the trunk of
> the vehicle Lynn was driving during the early morning hours of November 1,
> 2016.  It is undisputed that Lynn's brother, Dwight, was a passenger in the vehicle
> at the time the traffic stop was initiated.  Lynn pled not guilty to all charges.
>
> {¶3} On January 30, 2017, Lynn filed a motion to suppress, a motion Lynn
> thereafter supplemented with an additional filing on February 24, 2017.  As part

---

[1] 28 U.S.C. § 2254(e)(1) provides that "[i]n a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed correct" unless petitioner rebuts the presumption by "clear and convincing evidence."  Because petitioner has neither cited nor presented clear and convincing evidence to rebut the Ohio Court of Appeals' factual findings quoted herein, the state appellate court's factual findings are presumed to be correct.  *See McAdoo v. Elo,* 365 F.3d 487, 493-94 (6th Cir. 2004).

of his motion, Lynn argued the officers' warrantless search of the vehicle's trunk was not supported by probable cause.  In support, Lynn relied on the Ohio Supreme Court's decision in *State v. Farris*, 109 Ohio St.3d 519, 2006-Ohio-3255, 849 N.E.2d 985, a case in which the Ohio Supreme Court reversed a trial court's decision granting appellant's motion to suppress upon finding the law enforcement officer who conducted the search of the trunk of appellant's vehicle "had probable cause to search the trunk of [appellant's] vehicle based solely on the odor of burnt marijuana coming from inside the car."  *Id.* at ¶ 6.  In so holding, the Ohio Supreme Court determined that "[t]he odor of burnt marijuana in the passenger compartment of a vehicle does not, standing alone, establish probable cause for a warrantless search of the trunk of the vehicle."  *Id.* at ¶ 52.

### Suppression Hearing

{¶4} On March 14, 2017, the trial court held a hearing on Lynn's motion to suppress.  At this hearing, Officer Brian Carnes, the lone witness to testify at the suppression hearing, testified he conducted a traffic stop on the vehicle Lynn was driving after he noticed the vehicle did not have a front license plate and had "extremely" dark tinted windows.  There is no dispute that failing to display a front license plate is illegal in the state of Ohio.  There is also no dispute that it is illegal in the state of Ohio for a vehicle to have "extremely" dark tinted windows as those observed by Officer Carnes.

{¶5} Following the traffic stop, Officer Carnes approached the vehicle to speak with the vehicle's two occupants, Lynn and Dwight.  Once there, Officer Carnes detected an "extremely overwhelming odor of raw marijuana coming from inside the vehicle."  According to Officer Carnes, he immediately recognized the odor as raw marijuana based on his training and experience as a law enforcement officer.

{¶6} Upon speaking with Lynn and Dwight, who appeared "extremely nervous," Officer Carnes checked the brothers' information through dispatch, a check of which revealed Dwight had an active warrant for his arrest and "caution for possessing a firearm."  Shortly thereafter, Officer Poole arrived on the scene to provide backup for Officer Carnes.  Once Officer Poole arrived on the scene, Lynn and Dwight were removed from the vehicle, checked for weapons, handcuffed, and placed in the back of Officers Carnes' and Poole's police cruisers.

{¶7} After Lynn and Dwight were secured, the officers began searching the vehicle's passenger compartment.  When asked why they conducted such a search, Officer Carnes testified "[b]ecause the odor of marijuana coming from inside the vehicle."  It is undisputed the search of the vehicle's glove compartment led to the discovery of a white paper sack holding a Ziploc bag containing a small amount of raw marijuana and a large orange pill bottle containing numerous pills of ecstasy.

{¶8} Upon locating the raw marijuana and ecstasy in the vehicle's glove compartment, Officer Hauer, who had since arrived on the scene to provide backup to Officers Carnes and Poole, began searching the vehicle's trunk.  It is undisputed the search of the vehicle's trunk led to the discovery of crack cocaine and heroin in a Ziploc bag inside a Crown Royal bag located within a backpack hidden behind a speaker box.

{¶9} Upon discovering the crack cocaine and heroin, Officer Carnes placed both Lynn and Dwight under arrest.  Lynn thereafter admitted to Officer Carnes that "anything and everything in the car, it was his."  Concluding, when asked why a search of the vehicle's trunk was conducted, Officer Carnes testified the search was "[b]ased on the odor coming from inside the vehicle and what I found in the glove box. * * * There could have been more back there I don't know."

{¶10} After hearing arguments from both parties, the trial court issued its decision from the bench denying Lynn's motion to suppress.  In so holding, the trial court stated, in pertinent part, the following:

> Here's where I'm coming down.  We can't say that the *Farris* rule only applies when you suspect the driver.  It doesn't apply if the real guy you suspect mostly is the passenger.  I don't think we can do that.  The exception is the exception.  It's the vehicle.  It's not a personal type of thing, it's the vehicle analysis.  Is there likely contraband in the trunk if we find it in the passenger compartment.  That's the heart of the exception that is still valid here.  Even though our fact scenario is an odd one and an interesting one and a strange one.  But with that, that's my analysis. * * * [T]he automobile exception is still valid; and, it's not overborne by the burnt marijuana smell set forth in *Farris*.  Based upon that analysis, the motion is denied.

The trial court thereafter issued a written entry confirming the same.

### Plea and Sentence

{¶11} On July 20, 2017, Lynn agreed to plead no contest to single counts of trafficking in cocaine, aggravated trafficking in drugs, and trafficking in drugs in exchange for the remaining charges being dismissed.  After conducting the necessary Crim.R. 11 plea colloquy, the trial court accepted Lynn's no contest plea and found Lynn guilty as charged.  The trial court then sentenced Lynn to serve a mandatory term of seven years in prison, ordered Lynn to pay a mandatory $7,500 fine, and notified Lynn that he would be subject to a mandatory three-year postrelease control term upon his release from prison.

(Doc. 6, Ex. 15 at PageID 101–104).

## II.  PROCEDURAL HISTORY

### State Trial Court Proceedings

On December 20, 2016, the Butler County, Ohio grand jury returned a twelve-count indictment charging petitioner with two counts each of trafficking in cocaine, possession of cocaine, aggravated trafficking in drugs, trafficking in drugs, aggravated possession of drugs, and possession of drugs.  (Doc. 6, Ex. 1).  Petitioner, through counsel, entered a plea of not guilty to the charges in the indictment.

On January 30, 2017, petitioner filed a motion to suppress all evidence obtained as a result of the warrantless stop and search of the motor vehicle driven by petitioner.  (Doc. 6, Ex. 2).  The motion was granted by the trial court.  (Doc. 6, Ex. 3).  Petitioner subsequently filed a supplemental motion to suppress, which was denied by the trial court.  (Doc. 6, Ex. 4, 6).

On July 20, 2017, after plea negotiations, petitioner withdrew his not-guilty plea and entered a no-contest plea to one count each of trafficking in cocaine, aggravated trafficking in drugs, and trafficking in drugs.  (Doc. 6, Ex. 8).  The trial court accepted petitioner's plea and sentenced petitioner to a total aggregate prison sentence of seven years in the Ohio Department of Corrections.  (Doc. 6, Ex. 9).

### Direct Appeal

On August 31, 2017, petitioner filed a pro se notice of appeal to the Ohio Court of Appeals.  (Doc. 6, Ex. 10).  On the same date, a notice of appeal was submitted by appointed counsel.  (Doc. 6, Ex. 11).  The appeals were consolidated.  (Doc. 6, Ex. 12).  Petitioner raised the following single assignment of error:

> The trial court erred to the Appellant's prejudice when it denied his motion to suppress.

(Doc. 6, Ex. 13).  On August 20, 2018, the Ohio appellate court overruled petitioner's

4

assignment of error and affirmed the judgment of the trial court.  (Doc. 6, Ex. 15).

### Ohio Supreme Court

On February 25, 2019, petitioner filed a notice of appeal and notice of delayed appeal to

the Ohio Supreme Court.  (Doc. 6, Ex. 16, 17).  On April 17, 2019, the Ohio Supreme Court

granted petitioner's motion for a delayed appeal.  (*See* Doc. 6, Ex. 18 at PageID 148).  In his

memorandum in support of jurisdiction, petitioner raised the same single proposition of law as he

raised as an assignment of error on direct appeal.  (*See* Doc. 6, Ex. 18 at PageID 118).  On July

10, 2019, the Ohio Supreme Court declined to accept jurisdiction of the appeal.  (Doc. 6, Ex. 20).

### Federal Habeas Corpus

Petitioner filed the instant federal habeas corpus petition on October 11, 2019.  (Doc. 1).

Petitioner raises the following ten grounds for relief in the petition:

> **GROUND ONE**: Violation of the Fourth Amendment Unreasonable Search and Seizure.
>
> **Supporting facts**:  David Lynn is charged with several felony drug offenses, including trafficking in drugs.  During the early morning hours of November 1, 2016 Officer Carnes made a traffic stop on the vehicle Mr. Lynn was driving for not having a front license plate and with dark tinted windows.  While speaking to Mr. Lynn, Officer Carnes smelled an odor of raw marijuana emanating from inside the vehicle but not the truck of the vehicle.  Also Officer Carnes stated that as he looking into the vehicle he didn't see any contraband.
>
> **GROUND TWO**: Seizure of vehicle.
>
> **Supporting facts**:  David Lynn was seized when Officer Carnes ordered him to turn off the car engine before the search occurred.
>
> **GROUND THREE**:  No consent was given to search the vehicle.
>
> **Supporting facts**:  Did not ask for consent to search the vehicle nor was consent given to search the vehicle.  Suppression hearing testimony.
>
> **GROUND FOUR**: Protective sweep was improper.

**Supporting facts**:  When Officer Carnes conducted his protective sweep of the vehicle Mr. Lynn was driving.  Mr. Lynn was not under arrest nor him nor his passenger were armed.

**GROUND FIVE**: There was insufficient evidence to establish probable cause for a search of the trunk without a warrant to do so.

**Supporting facts**:  Viewed objectively, the evidence did not establish a fair probability that contraband would be found in the trunk.  Also mention at the Suppression Hearing about the officer could ha[ve] tried to get a warrant.

**GROUND SIX**: "Reaching Distance" of the Passenger Compartment at the time of the search occur.

**Supporting facts**:  The search was not permissible under Arizona v. Gant because the defendant was lock[ed] in the back of Officer Carnes police vehicle and his passenger was in Officer Pohl's with his warrant being confirm[ed] before the search of the vehicle occurred.

**GROUND SEVEN**: It is "Suspicious that neither officer carried a tint meter with him when they approached the vehicle Lynn was driving for a tint violation" without clarifying why that fact seem suspicious.

**GROUND EIGHT**:  Miss handling of the Drugs.  Heroin disappears.  The weight of the Cocaine Increases.  The weight of everything is shown in Officer Carnes Incident Report.  Also in his testimony at the Suppression Hearing Officer Carnes mention all of the drugs listed in his Incident Report.

**GROUND NINE**:  Lynn's admission not knowing what was in the bag.  Lynn's confession, Suppression Hearing and Incident Report which is the product of the unlawful search, must also be suppressed.

**GROUND TEN**: There is no proof of a citation for no front license, and the tinted windows.  There is no record of any citations that has prolong the traffic stop.

(Doc. 1).

Respondent has filed a return of writ in opposition to the petition.  According to

respondent, petitioner's grounds for relief are either non-cognizable or waived by virtue of his

no-contest plea.  (Doc. 7).  As noted above, petitioner has filed a reply to the return of writ.

(Doc. 10).

### III.    THE PETITION SHOULD BE DENIED

### A. Grounds One through Seven and Ground Nine are not cognizable in federal habeas corpus.

In Grounds One through Seven and in Ground Nine of the petition, petitioner challenges

the search and seizure of his vehicle.  As noted above, petitioner challenged the search under the

Fourth Amendment in a motion to suppress in the trial court and on further review in the Ohio

Court of Appeals.[2]  In overruling petitioner's assignment of error on direct appeal, the appeals

court reasoned as follows:

> {¶14}  In his single assignment of error, Lynn argues that the trial court erred by denying his motion to suppress.  In support, Lynn argues the officers lacked probable cause to conduct a warrantless search of the vehicle's trunk.  We disagree.

> ### Standard of Review

> {¶ 15}  Appellate review of a ruling on a motion to suppress presents a mixed question of law and fact. *State v. Gray*, 12th Dist. Butler No. CA2011-09-176, 2012-Ohio-4769, ¶ 15, citing *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, ¶ 8.  When considering a motion to suppress, the trial court, as the trier of fact, is in the best position to weigh the evidence to resolve factual questions and evaluate witness credibility. *State v. Vaughn*, 12th Dist. Fayette No. CA2014-05-012, 2015-Ohio-828, ¶ 8.  Therefore, when reviewing the denial of a motion to suppress, this court is bound to accept the trial court's findings of fact if they are supported by competent, credible evidence. *State v. Durham*, 12th Dist. Warren No. CA2013-03-023, 2013-Ohio-4764, ¶ 14.  "An appellate court, however, independently reviews the trial court's legal conclusions based on those facts and determines, without deference to the trial court's decision, whether as a matter of law, the facts satisfy the appropriate legal standard." *State v. Cochran*, 12th Dist. Preble No. CA2006-10-023, 2007-Ohio-3353, ¶ 12.

---

[2] As noted by respondent, petitioner only challenged the search of the vehicle's trunk in the state courts and, therefore, did not fairly present his claims challenging different issues under the Fourth Amendment. (*See* Doc. 6, Ex. 13, 15, 18).  However, because petitioner's Fourth Amendment claims are not cognizable the Court need not determine whether petitioner procedurally defaulted and waived any of his Fourth Amendment claims by failing to fairly present them to the Ohio courts.

## Automobile Exception

{¶ 16} Searches and seizures conducted without a warrant are per se unreasonable unless the search and seizure falls within one of the few specifically established and well delineated exceptions. *State v. Fisher*, 10th Dist. Franklin No. 10AP-746, 2011-Ohio-2488, ¶ 17. One such exception is the so-called "automobile exception" to the warrant requirement. *State v. Young*, 12th Dist. Warren No. CA2011-06-066, 2012-Ohio-3131, ¶ 34. Under the automobile exception, law enforcement officers may search a motor vehicle without a warrant if the officers have probable cause to believe the vehicle contains contraband. *State v. Battle*, 10th Dist. Franklin No. 10AP-1132, 2011-Ohio-6661, ¶ 33. Probable cause in these instances is "a belief reasonably arising out of circumstances known to the seizing officer, that an automobile or other vehicle contains that which by law is subject to seizure and destruction." *State v. Popp*, 12th Dist. Butler No. CA2010-05-128, 2011-Ohio-791, ¶ 27, quoting *State v. Kessler*, 53 Ohio St.2d 204, 208 (1978). The determination of probable cause is fact-dependent and turns on what the officers knew at the time they conducted the search. *Battle* at ¶ 34, citing *Bowling Green v. Godwin*, 110 Ohio St.3d 58, 2006-Ohio-3563, ¶ 14.

{¶ 17} As noted by the United States Supreme Court in *United States v. Ross*, 456 U.S. 798, 825, 102 S.Ct. 2157 (1982), "[i]f probable cause justifies the search of a lawfully stopped vehicle, it justifies the search of every part of the vehicle and its contents that may conceal the object of the search." Although not explicit, the Ohio Supreme Court held the same in *State v. Moore*, 90 Ohio St.3d 47, 51 (2000), stating that "[o]nce a law enforcement officer has probable cause to believe that a vehicle contains contraband, he or she may search a validly stopped motor vehicle based upon the well-established automobile exception to the warrant requirement." However, the Ohio Supreme Court in *Farris* limited its holding in *Moore* upon finding "[t]his court did not extend the search of the vehicle to the trunk in [*Moore*], and we decline to do so here." *Farris*, 2006-Ohio-3255 at ¶ 50; *see also State v. Murrell*, 94 Ohio St.3d 489 (2000), syllabus ("[w]hen a police officer has made a lawful custodial arrest of the occupant of an automobile, the officer may, as a contemporaneous incident of that arrest, search the passenger compartment of that automobile"). This is because, as the Ohio Supreme Court thereafter stated, "[a] trunk and a passenger compartment of an automobile are subject to different standards of probable cause to conduct searches." *Id.*, 2006-Ohio-3255 at ¶ 52.

## Analysis

{¶ 18} Relying on the Ohio Supreme Court's decision in *Farris*, Lynn argues the trial court erred by denying his motion to suppress because the officers lacked probable cause to conduct a warrantless search of the vehicle's trunk. Again, as the Ohio Supreme Court in *Farris* held, "[t]he odor of burnt marijuana in the passenger compartment of a vehicle does not, standing alone, establish probable cause for a warrantless search of the trunk of the vehicle." *Id.*, 2006-Ohio-3255 at

8

¶ 52. "This proposition is established by the common sense observation that an odor of burning marijuana would not create an inference that burning marijuana was located in a *trunk*." (Emphasis sic.) *State v. Gonzales*, 6th Dist. Wood No. WD-07-060, 2009-Ohio-168, ¶ 22. However, just as the trial court found in this case, Lynn's reliance on *Farris* is misplaced as the facts in that case are readily distinguishable from the case at bar.

{¶ 19} Unlike in *Farris*, the officers in this case did not rely on the odor of *burnt* marijuana emanating from the vehicle's passenger compartment, standing alone, to justify their search of the vehicle's trunk. In fact, the officers in this case did not rely on the odor of *burnt* marijuana at all. Rather, upon detecting an "extremely overwhelming" odor of *raw* marijuana originating from the vehicle, the officers conducted a search of the vehicle's passenger compartment. This search uncovered a white paper sack holding a Ziploc bag containing a small amount of raw marijuana and a large orange pill bottle containing numerous pills of ecstasy located in the vehicle's glove compartment. Based on the case law outlined above, including the limited holding in *Farris*, the discovery of these two illegal substances within the vehicle's glove compartment provided the officers with probable cause to extend their search to the vehicle's trunk where they discovered crack cocaine and heroin, both of which Lynn admitted belonged to him. Therefore, unlike in *Farris*, because the officers in this case did not rely on the odor of *burnt* marijuana emanating from the vehicle's passenger compartment to justify their warrantless search of the vehicle's trunk, the trial court correctly determined that the Ohio Supreme Court's decision in *Farris* was inapplicable to the case at bar.

{¶ 20} The odor of *raw* marijuana provides different probable cause than the odor of *burnt* marijuana. *Gonzales*, 2009-Ohio-168 at ¶ 22. "The odor of raw marijuana – especially an overwhelming odor of raw marijuana – creates probable cause to believe that a large quantity of raw marijuana will be found." *Id.* Under such circumstances, "[a]n officer may rationally conclude that a large quantity of raw marijuana would be located in a vehicle's trunk." *Id.*, citing *United States v. Ashby*, 864 F.2d 690 (10th Cir. 1988); and *United States v. Bowman*, 487 F.2d 1229 (10th Cir. 1973). "'[W]here an officer detects a strong odor of raw marijuana, but no large amount is found within the passenger compartment of the vehicle, the officer has probable cause to search the trunk,' including the trunk's contents." *State v. Gartrell*, 3d Dist. Marion No. 9-14-02, 2014-Ohio-5203, ¶ 58, quoting *State v. Price*, 6th Dist. Sandusky No. S-11-037, 2013-Ohio-130, ¶ 16. That is exactly what occurred here. "[T]he Ohio Constitution, like the United States Constitution, does not prohibit warrantless searches of an automobile trunk after law enforcement has found contraband in the passenger compartment." *State v. Jones*, 9th Dist. Lorain No. 12CA010270, 2013-Ohio-2375, ¶ 20; *see, e.g., State v. Greenwood*, 2d Dist. Montgomery No. 19820, 2004-Ohio-2737, ¶ 11 (law enforcement officer's observation of marijuana on a vehicle's passenger seat and floorboard provided probable cause to "search the entire vehicle,

9

including the trunk and its contents"). Lynn's argument to the contrary lacks merit.

(Doc. 6, Ex. 15 at PageID 105–109).

The Supreme Court held in *Stone v. Powell*, 428 U.S. 465 (1976), that federal habeas courts are prohibited from addressing the merits of Fourth Amendment claims brought by state prisoners if the prisoner had a full and fair opportunity to litigate such a claim in the state courts and the presentation of the claim was not thwarted by any failure of the State's corrective process. *Stone,* 428 U.S. at 494–95. The Sixth Circuit has developed a two-step inquiry to assess whether *Stone* applies to preclude federal habeas review of Fourth Amendment claims. *Riley v. Gray*, 674 F.2d 522, 526 (6th Cir. 1982); *see also Machacek v. Hofbauer,* 213 F.3d 947, 952 (6th Cir. 2000). Under that inquiry, the federal habeas corpus court must determine (1) whether the State has provided a procedural mechanism through which, in the abstract, the petitioner could raise a Fourth Amendment claim, and (2) whether the petitioner's presentation of the Fourth Amendment claim was in fact frustrated because of a failure of that mechanism. *Id.*

In *Riley,* the Sixth Circuit held that by providing for the filing of a pretrial motion to suppress and the opportunity to directly appeal any ruling denying a suppression motion, Ohio has a mechanism in place for the resolution of Fourth Amendment claims, which "is, in the abstract, clearly adequate." *Riley,* 674 F.2d at 526; *see also Loza v. Mitchell,* 705 F. Supp.2d 773, 860 (S.D. Ohio 2010). Therefore, the determination whether *Stone* applies turns solely on the resolution of the second *Riley* inquiry. *See Hillman v. Beightler,* No. 5:09-cv-2538, 2010 WL 2232635, at *5 (N.D. Ohio May 26, 2010).

Courts have consistently held that the "relevant inquiry" in resolving the second question posed in *Riley* is whether the "habeas petitioner had an opportunity to litigate his claims, not

10

whether he in fact did so or even whether the Fourth Amendment claim was correctly decided"

by the state courts. *Wynne v. Renico,* 279 F. Supp.2d 866, 892 (E.D. Mich. 2003) (citing *Ortiz–*

*Sandoval v. Gomez,* 81 F.3d 891, 899 (9th Cir. 1996)).[3]

> As long as a state prisoner has had an opportunity to litigate his Fourth
> Amendment claims by means of procedures that are "suitably crafted" to test for
> possible Fourth Amendment violations, a federal habeas court does not have the
> power, under *Stone,* to "second-guess the accuracy of the state courts' resolution
> of those claims." Thus, a "mistaken outcome" of a suppression hearing that has
> been conducted in a state trial court, standing alone, does not deny a habeas
> petitioner's opportunity to fully and fairly litigate his Fourth Amendment claims. .
> . . Thus, even "potentially meritorious Fourth Amendment claims" are barred by
> *Stone* on habeas review if the petitioner had a full and fair opportunity to litigate
> his claims in the state courts.

*Id.* (quoting *Sanna v. Dipaolo,* 265 F.3d 1, 8–9 (1st Cir. 2001), and *Deputy v. Taylor,* 19 F.3d

1485, 1491 (3rd Cir. 1994)); *see also Hillman, supra,* 2010 WL 2232635, at \*5 (quoting *Cabrera*

*v. Hinsley,* 324 F.3d 527, 531–32 (7th Cir. 2003)) ("Absent a subversion of the hearing process,

we will not examine whether the judge got the decision right. . . . '[F]ull and fair' guarantees the

right to present one's case, but it does not guarantee a correct result."); *Brown v. Berghuis,* 638

F. Supp.2d 795, 812 (E.D. Mich. 2009) (and cases cited therein) ("Under *Stone,* . . . the

correctness of the state courts' conclusions is simply irrelevant.").

The Sixth Circuit has stated that the second *Riley* inquiry is "not meant to be a case by

case review of state court determinations," but rather "is a review of whether the state provided

an adequate mechanism to address Petitioner's Fourth Amendment claims." *Abdul–Mateen v.*

*Hofbauer,* No. 98–2323, 2000 WL 687653, at \*3 (6th Cir. May 19, 2000). In *Abdul–Mateen,* the

court recognized that an exception was carved out in *Riley* for "egregious error in the application

of [F]ourth [A]mendment principles" amounting to a refusal by the state courts to consider or

---

[3] The district court later supplemented its opinion in *Wynne* on another issue, which was determined to be
sufficiently meritorious to justify the granting of a conditional writ of habeas corpus. *See Wynne v. Renico,* 595 F.
Supp.2d 775 (E.D. Mich. 2009). Thereafter, the Sixth Circuit reversed the district court's revised judgment granting

apply controlling Supreme Court precedents. *See id.* (quoting *Riley,* 674 F.2d at 526, in turn citing *Gamble v. Oklahoma,* 583 F.2d 1161 (10th Cir. 1978)). In *Riley,* the Sixth Circuit explained that when an "egregious error" of such "magnitude and nature" is present, as it was in *Gamble,* "a federal habeas court *might* be justified in concluding that an opportunity for a full and fair hearing had not been afforded the petitioner." *Riley,* 674 F.2d at 526 (emphasis added). In a subsequent decision, the Sixth Circuit rejected a petitioner's argument that an egregious misapplication of a controlling Supreme Court precedent also could justify such a conclusion. *Gilbert v. Parke,* 763 F.2d 821, 824 (6th Cir. 1985). The court reasoned: "This court in *Riley* declined to adopt the portion of *Gamble* permitting federal review of egregious substantive errors committed by state courts on Fourth Amendment claims. . . . Since the [state] courts provided Gilbert a full and fair opportunity to litigate his Fourth Amendment claims, second-guessing the [state] Supreme Court on the merits would be inconsistent with *Stone." Id.*

Here, as in *Gilbert,* the record does not reflect the magnitude or type of "egregious error" referred to in *Riley* as possibly justifying a finding that the opportunity for a full and fair hearing was thwarted. *Cf. Bergholz v. McMackin,* No. 89–3740, 1990 WL 223036, at *3 (6th Cir. Dec. 27, 1990) (per curiam) (in ruling that *Stone* foreclosed the petitioner's Fourth Amendment claim, the Sixth Circuit pointed out that "even if the state courts were in error in applying substantive law regarding 'seizures' under the Fourth Amendment, the state courts did not refuse to follow applicable precedent"). To the contrary, it appears clear from the record that petitioner was able to fully and fairly litigate his Fourth Amendment claims in the state courts.

Petitioner was permitted to raise his claims to the trial court through a motion to suppress, and the trial court held a hearing on the matter. (*See* Doc.6, Ex. 2–6, 21). Moreover, petitioner was able to challenge the trial court's ruling on direct appeal to the Ohio Court of Appeals and in

---

habeas corpus relief based on that other ground. *Wynne v. Renico,* 606 F.3d 867 (6th Cir. 2010).

the Ohio Supreme Court. (*See* Doc. 6, Ex. 15, 18).  As set forth above, the Ohio Court of

Appeals carefully considered petitioner's arguments and the applicable precedents in affirming

the trial court's ruling.

Accordingly, the Court concludes that Grounds One through Seven and Ground Nine of

the petition, challenging the search and seizure of evidence under the Fourth Amendment, are

barred from review under the Supreme Court's *Stone* decision.

### B.  Grounds Eight and Ten

In Grounds Eight and Ten petitioner challenges the evidence underlying his

convictions.  In Ground Eight, he challenges the amount and handling of the drugs seized from

his vehicle.  Similarly, in Ground Ten petitioner alleges there was no proof of a traffic citation

stemming from the traffic stop.

Although petitioner has not fairly presented these claims to the state courts, the claims are

waived by virtue of petitioner pleading no-contest at trial.  A guilty or no-contest plea involves a

waiver of many substantial constitutional rights, including the right to a trial by jury where the

State has the burden of proving the defendant's guilt beyond a reasonable doubt, the right to

confront adverse witnesses, and the right to present evidence in one's defense.  *Fautenberry v.*

*Mitchell,* 515 F.3d 614, 636 (6th Cir. 2008) (citing *Boykin v. Alabama,* 395 U.S. 238, 243

(1969)).  There is "no constitutional requirement that the State prove the guilt of a defendant who

pleads no contest." *Post v. Bradshaw,* 621 F.3d 406, 427 (6th Cir. 2010).  By forfeiting one's

right to a jury trial, as well as the rights to confront adverse witnesses and to present evidence in

one's defense, a criminal defendant waives any objection to the sufficiency of the evidence.  *See*

*id.* at 426-27; *see also Render v. Warden, S. Ohio Corr. Facility,* No. 1:10cv629, 2012 WL

3627766, at *4 (S.D. Ohio Aug. 22, 2012) (Spiegel, J.); *cf. United States v. Whitelaw,* 376 F. App'x 584, 592 (6th Cir. 2010).

Petitioner has not argued, much less demonstrated, that his no-contest plea was entered unknowingly, unintelligently, or involuntarily.  Therefore, his plea forecloses relief to the extent he seeks to challenge the sufficiency of the evidence in the instant action.

Accordingly, in sum, petitioner is not entitled to habeas corpus relief and his habeas petition should be denied.  For the reasons stated above, petitioner's grounds for relief are not cognizable in federal habeas corpus or were waived by virtue of his no-contest plea.  Therefore, it is **RECOMMENDED** that petitioner's petition for a writ of habeas corpus (Doc. 1) be **DENIED** with prejudice.

## IT IS THEREFORE RECOMMENDED THAT:

1.  Petitioner's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Doc. 1) be **DENIED** with prejudice.

2.  A certificate of appealability should not issue with respect to the claims alleged in the petition, which have been addressed on the merits herein, because petitioner has not stated a "viable claim of the denial of a constitutional right," nor are the issues presented "adequate to deserve encouragement to proceed further."  *See Slack v. McDaniel*, 529 U.S. 473, 475 (2000) (citing *Barefoot v. Estelle,* 463 U.S. 880, 893 & n.4 (1983)).  *See also* 28 U.S.C. § 2253(c); Fed. R. App. P. 22(b).

3.  With respect to any application by petitioner to proceed on appeal *in forma pauperis*, the Court should certify pursuant to 28 U.S.C. § 1915(a)(3) that an appeal of any Order adopting this Report and Recommendation would not be taken in "good faith," and therefore **DENY** petitioner leave to appeal *in forma pauperis* upon a showing of financial necessity.  *See* Fed. R.

App. P. 24(a); *Kincade v. Sparkman,* 117 F.3d 949, 952 (6th Cir. 1997).

Date:_____9/25/2020_____

Karen L. Litkovitz
United States Magistrate Judge

15

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

DAVID LYNN,                                      Case No. 1:19-cv-869
      Petitioner,

                                       McFarland, J.
    vs.                                          Litkovitz, M.J.

WARDEN, MADISON
CORRECTIONAL INSTITUTION,
      Respondent.

**NOTICE**

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of

the recommended disposition, a party may serve and file specific written objections to the

proposed findings and recommendations.   This period may be extended further by the Court on

timely motion for an extension.  Such objections shall specify the portions of the Report objected

to and shall be accompanied by a memorandum of law in support of the objections.  If the Report

and Recommendation is based in whole or in part upon matters occurring on the record at an oral

hearing, the objecting party shall promptly arrange for the transcription of the record, or such

portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the

assigned District Judge otherwise directs.  A party may respond to another party's objections

**WITHIN 14 DAYS** after being served with a copy thereof.  Failure to make objections in

accordance with this procedure may forfeit rights on appeal.  *See Thomas v. Arn*, 474 U.S. 140

(1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).